**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ROKU INC.,

                                Plaintiff,

                -against-

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A HERETO,

                              Defendants.
-----------------------------------------------------------------X

**22-CV-0202 (JAV) (VF)**

**REPORT AND**
**RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**TO: THE HONORABLE JEANNETTE A. VARGAS, United States District Judge.**

On January 10, 2022, Plaintiff Roku LLC ("Roku") commenced this action asserting claims against 130 Defendants[1] for trademark counterfeiting, trademark infringement, and false designation of origin under the Lanham Act, as well as unfair competition under New York law. See ECF No. 9 at ¶¶ 45-64. Since filing the complaint, Roku voluntarily dismissed its claims as against 110 of the 130 Defendants.[2] To date, 19 Defendants (the "Defaulting Defendants")[3] remain in this action and have not appeared to defend against Roku's claims. For the reasons set forth below, I respectfully recommend that Roku be awarded damages for its Lanham Act claims in Counts I and II of the complaint in the amount of $1,050,000.

---

[1] The 130 Defendants are listed in Schedule A of the Complaint. See ECF No. 13 at 1-4

[2] See ECF Nos. 26, 58-59, 64-66, 69-71, 73, 77-79, 81, 83-85, 87-93, 95-96, 98-99, 123.

[3] The Defaulting Defendants are Gaudi, HzgangDirect, AuntbingluuX, Electronic_outlet, huangchen123, jinyuzhir, kappdo, laceskong, Loverhart, Mccmyy, monster lady, mykshop, noral, phonemol, Richapex2016, schaef, xuenvzhuang, Xutao, and zhanghongyue. ECF No. 129-1.

**BACKGROUND**

A.  **Factual Background**

Roku, a corporation doing business in New York, is "a leading manufacturer of a variety of digital media players and accessories (including remotes) for video streaming." ECF No. 9 at ¶ 15. Defendants are "individuals and business entities who . . . reside mainly in the People's Republic of China or other foreign jurisdictions" and operate storefronts on online marketplace platforms, including Amazon.com ("Amazon") and Wish.com ("Wish"). Id. at ¶¶ 21-22.

Roku products are marketed under the trademarks "Roku" and "ROKU," as well as through a number of design marks featuring: the color purple "applied to the entirety of the exterior surface of a directional control button located on a remote control for a streaming video player (see, e.g., ECF No. 9-1 at 5), a fabric tag in the color purple attached to the housing of the goods (see, e.g., id. at 39, 43), and Roku logos with a purple background with white letters. See, e.g., id. at 17, 20, 51.

The ROKU Trademarks ("Roku Marks") are the subject of substantial and continuous marketing and promotion by Roku, including in print media, and Roku's website and social media sites. ECF No. 9 at ¶ 17. As such, "products bearing any of the ROKU Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from [Roku]." Id. at ¶ 20. Roku "has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon and Wish," including storefronts belonging to the Defaulting Defendants, which "were offering for sale, selling, and importing counterfeit ROKU Products to consumers in [New York] and throughout the United States." Id. at ¶ 24. The Defaulting Defendants design their online storefronts so that they appear to consumers as authorized retailers selling genuine Roku products. Id. at ¶ 26.

2

Through Roku's Director of Intellectual Property, Roku has identified that the Defaulting Defendants offered for sale and/or sold Roku counterfeit products to a consumer in New York, and Roku also verified that each Defaulting Defendant provides shipping to a New York address. ECF No. 9 at ¶ 12.a.  Roku also confirmed that the Defaulting Defendants' merchant storefronts accepts payment in U.S. Dollars. Id. at ¶ 27.

The Roku trademarks are highly distinctive and famous marks that have been continuously used and never abandoned by Roku. Id. at ¶¶ 19, 47. A comparison of the photos of Roku products included in the complaint (see id. at ¶ 16) and the screenshots of the counterfeit products sold on Amazon and Wish (see ECF Nos. 13-19) show substantial similarities or identical products, indicating that the Defaulting Defendants have knowledge of Roku's rights in the trademarks and are willfully infringing and intentionally using counterfeits of the trademarks to cause confusion among the general public. ECF No. 9 at ¶¶ 2, 7, 44, 48, 53, 60-62. The Defaulting Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their stores. Id. at ¶¶ 32-33.

### B. Procedural History

On January 10, 2022, Roku commenced the instant action, asserting three causes of action: (1) trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1117; (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) unfair competition under New York law. ECF No. 9 at ¶¶ 45-64. As is relevant here, Roku moved *ex parte* for a temporary restraining order, an order to show cause why a preliminary injunction should not issue, an asset restraining order, and an order authorizing alternative service by electronic mail. ECF Nos. 1-12.

On January 20, 2022, the Honorable Paul G. Gardephe granted Roku's *ex parte*

applications and entered a temporary restraining order, enjoining Defendants from continuing to sell counterfeit Roku products on Amazon and/or Wish. ECF No. 22. Judge Gardephe also directed the parties to appear at a hearing on February 1, 2022, to discuss Roku's application for a preliminary injunction. ECF No. 22 at ¶ 12. On January 27, 2022, pursuant to the alternative methods of service authorized by the Court, Roku served each Defendant with the summons and Complaint, as well as copies of the temporary restraining order and the order to show cause. ECF No. 35. On January 31, 2022, Roku served each Defendant with the Court's order adjourning the hearing and extending Defendants' time to oppose Roku's request for a preliminary injunction. Id. On February 8, 2022, the Court held a hearing to address Roku's application for a preliminary injunction. ECF Nos. 29; ECF No. 109 at 1. No Defendant appeared at the hearing. ECF 109 at 2. On February 10, 2022, the Court granted the request for a preliminary injunction. Id.

On July 15, 2022, Roku moved for the entry of default against the Defaulting Defendants. ECF No. 100. On the same day, the Clerk of Court entered a Certificate of Default against the Defaulting Defendants. ECF No. 102. On July 27, 2022, the Court issued an order directing any Defaulting Defendant who wished to oppose the default judgment motion to file an opposition by August 8, 2022. ECF No. 107. No Defaulting Defendant filed an opposition or otherwise appeared in the case. On August 18, 2022, the Court held a hearing to address Roku's request for default judgment. ECF No. 109. No Defaulting Defendant appeared at the hearing. Id. On September 19, 2022, the Court entered an order granting default judgment in favor of Roku against the Defaulting Defendants on all of Roku's claims.[4] Id.

On September 19, 2022, the Court referred this case to the undersigned for an inquest on

---

[4] Although the Court entered default judgment as against Defendant WINBOUS, Roku is not seeking damages as against that defendant. ECF No. 123.

damages. ECF No. 110. On January 14, 2025, the Court directed Roku to submit proposed findings of fact and conclusions of law concerning damages by February 14, 2025, and directed the Defaulting Defendants to submit a response by March 14, 2025. ECF No. 128. On February 13, 2025, Roku submitted its Proposed Findings of Fact and Conclusions of Law in support of an award of damages. ECF No. 129. To date, the Defaulting Defendants have not responded to Roku's submission and have not otherwise appeared in this case.

## DISCUSSION

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that has failed to plead or otherwise defend itself in an action. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65-66 (2d Cir. 1981). Rule 55 requires a two-step process for an entry of a default judgment. See Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011) (per curiam); Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2012). First, upon notification from the moving party, the Clerk of Court enters the default of the party failing to plead or otherwise defend the moving party's suit. See Priestley, 647 F.3d at 504-05 (citing Fed. R. Civ. P. 55(a)). Second, once the Clerk issues a certificate of default, the moving party may apply for the entry of a default judgment pursuant to Rule 55(b). Id. at 505.

A default constitutes an admission of all well-pled factual allegations in the complaint. Thus, a plaintiff's allegations in the complaint, as they pertain to liability, are deemed true. See Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (noting that an entry of default establishes liability but does not constitute an admission of damages); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) (explaining that "factual allegations are taken as true in light of the general default judgment"). However, a plaintiff is not entitled to a default judgment as a matter

of right merely because the opposing party is in default. See Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 187 (2d Cir. 2015). A plaintiff bears the burden of demonstrating that their uncontroverted allegations are sufficient to establish a defendant's liability as to each cause of action. Id.; see also Morales v. Mw Bronx, Inc., No. 15-CV-6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (collecting cases).

As to damages, Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount. Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund, 779 F.3d at 189 ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). Additionally, although well-pleaded allegations as to liability are deemed admitted by a defaulting defendant, the same is not true for damages. See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citation and quotation marks omitted).

Roku bears the burden of establishing an evidentiary basis for the damages sought against the Defaulting Defendants. See Bricklayers and Allied Craftworkers Local 2, Albany N.Y. Pension Fund, 799 F.3d at 189; Int'l Ass'n of Heat & Frost Insulators v. Affiliated Env't. Servs. NJ, Inc., No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017). Furthermore, "[w]here a plaintiff seeks damages on the theory that each individual acting alone infringed a work, rather than joint and severally, a court must assess damages with respect to

6

each individual defendant such that the rights of the Defaulting Defendants are not compromised by the virtue of their being joined in the same action." Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 370 (S.D.N.Y. 2020), adhered to in part on reconsideration by, No. 18-CV-01774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) (citation omitted).

Here, Roku's submissions have not been contested, and the submissions provide all the information needed to determine damages. As such, a hearing on damages is not necessary. Further, although Judge Gardephe granted Roku's motion for default judgment (see ECF No. 109), I must nevertheless assess whether the allegations in the complaint establish the elements of each claim for which Roku seeks damages. Au Bon Pain Corp., at 65; see also Qlay Co. v. Owen, No. 21-CV-1784 (JLR) (VF), 2024 WL 4771309, at *3 (S.D.N.Y. Oct. 16, 2024), adopted by, 2024 WL 4769718 (S.D.N.Y. Nov. 13, 2024).

### B.  Personal Jurisdiction

As a preliminary matter, it is necessary to determine whether the Court has personal jurisdiction over the Defaulting Defendants who are alleged to be located in China or other foreign jurisdictions. ECF No. 9 at ¶ 21. Although the Court exercised personal jurisdiction over the Defaulting Defendants when it issued the TRO and the preliminary injunction, "it is appropriate for the Court to assure itself that it has personal jurisdiction over those defendants it purports to bind indefinitely" by issuance of a default judgment. Spin Master Ltd., 463 F. Supp. 3d at 361 (citing Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010)).

In cases raising a federal claim, where the statute does not provide for nationwide service, the personal jurisdiction rules of the forum state apply. See, e.g., Schentag v. Nebgen, No. 17-CV-08734 (GHW), 2018 WL 3104092, at *15 (S.D.N.Y. June 21, 2018) (citing PDK Labs, Inc.

v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's personal jurisdiction rules apply here because the Lanham Act does not provide for nationwide service. See Alibaba Grp. Holding Ltd. v. Alibabacoin Found., No. 18-CV-2897 (JPO), 2018 WL 2022626, at *6 (S.D.N.Y. Apr. 30, 2018).

In New York, a court engages in a two-step analysis to determine whether there is personal jurisdiction over a non-domiciliary in a trademark or copyright case. Spin Master Ltd., 463 F. Supp. 3d at 362. At step one, the court applies New York's long-arm statute, and at step two, which takes place only if the long-arm statute permits personal jurisdiction, the court analyzes "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

Roku asserts that there is personal jurisdiction over each Defaulting Defendant pursuant to C.P.L.R. §§ 302(a)(1) and 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k). See ECF No. 9 at ¶ 12. Under C.P.L.R. § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" Two requirements must be met to establish personal jurisdiction under § 302(a)(1): "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC Law Offs., 799 F.3d 161, 168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)).

A foreign defendant, like the Defaulting Defendants, does not need to be physically present in the forum state, but must engage in a "purposeful activity" through which the foreign defendant "purposefully avail[s] [themself] of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). A "'single act' of selling counterfeit goods into New York satisfies" the requirement of C.P.L.R. § 302(a)(1). Chloe, 616 F.3d at 170 (internal quotation marks omitted). Additionally, a "website's interactivity may be useful for analyzing personal jurisdiction insofar as it helps to decide whether the defendant transacts any business in New York" under § 302(a)(1). Id. (citing Best Van Lines, Inc., 490 F.3d at 252 (internal quotation marks omitted).

As alleged in the complaint, the Defaulting Defendants used online marketplaces like Amazon and Wish to sell and ship counterfeit Roku products to consumers in New York. ECF No. 9 at ¶¶ 12, 12.a, 12.b, 12.c, 43-44. Roku substantiated this allegation with: (1) a screenshot of the infringing listing for each Defaulting Defendant, which displayed a particular counterfeit Roku product; (2) a photograph of the checkout page for the counterfeit Roku product, showing confirmation that the product can be shipped to a New York address; and (3) for some products, a receipt with a confirmation of purchase and the date the product was shipped. See e.g., ECF Nos. 13-19. These screenshots from online marketplaces—specifically, Amazon and Wish—tie each Defaulting Defendant to a counterfeit Roku product and to the sale and/or attempted sale of that counterfeit product to a consumer in New York. Id.

The single act of shipping a counterfeit product into New York is sufficient to establish jurisdiction over the Defaulting Defendants, and Roku has confirmed that the Defaulting Defendants sold and/or offered for sale counterfeit Roku products on online marketplaces to consumers in New York. ECF Nos. 13-19; see also Kelly Toy Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., No. 21-CV-6029 (LGS) (SLC), 2022 WL 6246622, at *5 (S.D.N.Y. July 18, 2022), adopted by, 2022 WL 4298730 (S.D.N.Y. Sept. 19, 2022) (finding that personal

jurisdiction existed over foreign defendants where evidence showed that defaulting defendants had offered for sale counterfeit products on e-commerce sites Alibaba and AliExpress); Off-White LLC v. 5HK5584, No. 19-CV-00672 (RA) (JLC), 2020 WL 1646692, at *4 (S.D.N.Y. Apr. 3, 2020), adopted by, 2020 WL 3050552 (S.D.N.Y. June 8, 2020) (finding personal jurisdiction over foreign defendants because "New York customers are able to order goods for delivery" in New York on eBay.com).

Even for a Defaulting Defendant that never made an actual sale to a New York consumer, Roku has shown that each Defaulting Defendant offered to a New York consumer the counterfeit Roku product for sale on Amazon and/or Wish, and courts in this District have found that sufficient to demonstrate purposeful availment by a defaulting defendant of the privileges of conducting activities in New York. See, e.g., WowWee Grp. Ltd. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019); Pinkfong Co. v. 7 Day Store, No. 22-CV-4133 (PAE) (JLC), 2023 WL 7274684, at *3 (S.D.N.Y. Nov. 2, 2023) (adopting R&R finding personal jurisdiction where defaulting defendant offered for sale counterfeit product to New York consumers on e-commerce websites). Moreover, Amazon and Wish are the types of "interactive" e-commerce sites upon which a finding of personal jurisdiction may be based. See, e.g., KAWS v. Individuals, Corps., LLCs, P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto, No. 22-CV-6721 (AKH), 2023 WL 1438637, at *2-3 (S.D.N.Y. Feb. 1, 2023) (finding personal jurisdiction over defendants that sold infringing goods on Amazon, Wish, and other "commercial Internet websites"). Finally, the sale of counterfeit trademarks is prohibited under the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), and consequently the Defaulting Defendants' "business transaction"—the offer and/or sale of the counterfeit products in New York—has a substantial relationship with the trademark infringement claims asserted in this

action. Spin Master Ltd., 463 F. Supp. 3d at 364. In short, because each Defaulting Defendant sells and/or offers to sell to New York consumers on an interactive e-commerce website, the Court has personal jurisdiction under § 302(a)(1) over each Defaulting Defendant.

Additionally, the assertion of personal jurisdiction over the Defaulting Defendants comports with due process, because the Defaulting Defendants "regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York." ECF No. 9 at ¶ 12. Due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945) (quotation omitted). This standard is satisfied without further inquiry by state long-arm statutes, like C.P.L.R. § 302, that permit the exercise of jurisdiction in a narrower range of circumstances than the Due Process Clause. Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, for the reasons discussed, the Court has personal jurisdiction over the Defaulting Defendants.

**C. Liability**

Roku seeks damages in connection with its claims under the Lanham Act brought in Counts I and II of the complaint. ECF No. 129 at ¶ 58; ECF No. 129-1. Therefore, "the Court considers the Defaulting Defendants' liability as to their violation of the Lanham Act alone." 5HK5584, 2020 WL 1646692, at *4; see also Coach Servs., Inc. v. K Ya Int'l Inc., No. 09-CV-4656 (RMB) (JCF), 2010 WL 2771897, at *2 (S.D.N.Y. June 10, 2010), adopted by, 2010 WL 2771907 (S.D.N.Y. July 12, 2010) ("In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability

need only be considered with respect to that claim.").

"The Lanham Act imposes liability on any person who, in connection with the sale, offering for sale, or distribution of a good, either uses a counterfeit of a registered mark or counterfeits such mark in advertising or packaging materials, when such use is likely to cause confusion." Allstar Mktg. Grp., LLC v. 123 Beads Store, No. 19-CV-3184 (AJN), 2020 WL 5836423, at *3 (S.D.N.Y. Sept. 30, 2020) (citing 15 U.S.C. §§ 1114(1)(a)-(b), 1125). To prevail on a Lanham Act trademark counterfeiting or infringement claim, a plaintiff must establish that the infringed mark is valid and "entitled to protection," and that "use of the allegedly infringing mark 'is likely to cause consumer confusion as to the origin or sponsorship' of the products to which it attached." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). A certificate of registration with the Patent and Trademark Office "is prima facie evidence that the mark is registered and valid (*i.e.* protectible)[.]" Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999).

Additionally, a plaintiff can establish consumer confusion through the factors laid out in Polaroid v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). However, a court "need not undertake a factor-by-factor analysis under Polaroid" in the case of counterfeits "because counterfeits, by their very nature, cause confusion." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); see also Coach, Inc. v. Horizon Trading USA, Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012); Spin Master, Ltd., 463 F. Supp. 3d at 368. The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Roku has established both elements of a trademark counterfeiting and infringement claim

as it concerns the Defaulting Defendants. First, Roku alleges that it is the owner of 15 U.S.
Trademark Registrations (see ECF No. 9 at ¶ 1) for certain "Roku Marks" that are currently in
use in commerce in connection with Roku products. ECF No. 9 at ¶¶ 16-20. Annexed to the
Complaint, Roku included a copy of the U.S. Patent and Trademark Office's registration
certificates for its registered Roku Marks. ECF No. 9-1 at 1-52. "A certificate of registration with
the Patent and Trademark Office is prima facie evidence that the mark is registered and valid
(*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right
to use the mark in commerce." Coach, Inc., 908 F. Supp. 3d at 433 (quoting Lane Cap. Mgmt.,
Inc., 192 F.3d at 345).

Second, Roku has established that the marks on the counterfeit products sold by the
Defaulting Defendants are likely to cause confusion because they are demonstrably counterfeit.
Counterfeit products, by their nature, are likely to cause confusion. See e.g., BTL Indus., Inc. v.
Versalini Beauty & Spa Salon, No. 23-CV-8617 (LJL), 2024 WL 3342293, at *4-5 (S.D.N.Y.
July 8, 2024); Kelly Toys Holdings, LLC v. Airpods Pro Store, No. 21-CV-8435 (LJL), 2022
WL 2801077, at *4 (S.D.N.Y. July 18, 2022). And here, Roku alleges that the Defaulting
Defendants are offering for sale and/or selling counterfeit products bearing the Roku Marks. ECF
No. 9 at ¶¶ 2, 4, 24, 30-31. Roku has also provided examples of the counterfeit products sold by
the Defaulting Defendants and the examples bear marks that are similar or identical to the
protected Roku marks and "likely to cause and has caused confusion, mistake, and deception"
among consumers. See, e.g., ECF No. 9 at ¶¶ 2, 7, 44, 48, 53, 60-62; see also ECF Nos. 13-19.
Accepting Roku's allegations in the complaint as true, the counterfeit products offered for sale
by the Defaulting Defendants are "virtually identical to one of [Roku's] products and incorporate
copies or colorable imitations of marks on their product packaging[.]" WowWee Grp. Ltd. v.

<u>Meirly</u>, No. 18-CV-706 (AJN), 2019 WL 1375470, at *7 (S.D.N.Y. Mar. 27, 2019). As such, Roku has established its trademark counterfeiting and infringement claims against the Defaulting Defendants in Counts I and II of the complaint. Default judgment as to those claims is thus warranted.

### D. **Damages**

#### 1. <u>Statutory Damages</u>

Roku requests statutory damages totaling $1,050,000, with amounts between $25,000 and $150,000 for each Defaulting Defendant depending on the amount of known counterfeit items sold by that defendant.[5] ECF No. 129-1 at 1-2. Roku seeks only statutory damages because, due to the Defaulting Defendants' failure to appear in this case, Roku's "actual damages are extremely difficult, if not impossible to calculate." ECF No. 129 at ¶ 37. Under the Lanham Act, at any time before final judgment is entered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, in cases of infringement. 15 U.S.C. §§ 1117(c)-(d); <u>see also</u> <u>Off-White v. Ali Jr.</u>, No. 19-CV-1775 (PAE) (SN), 2021 WL 11643206, at *8 (S.D.N.Y. July 23, 2021), <u>adopted by</u>, 2021 WL 3914077 (S.D.N.Y. Sept. 1, 2021). For the use of a counterfeit mark, a court may award statutory damages in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c); <u>see also</u> <u>All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.</u>, 775 F. Supp. 2d 613, 620-21 (S.D.N.Y. 2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by

---

[5] The amount of damages sought for each Defaulting Defendant is listed in a chart at ECF No. 129-1.

counterfeiters.").

Although 15 U.S.C. § 1117(c) instructs courts to award a "just" amount and establishes a cap on the award, it "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citation and quotation marks omitted). Accordingly, "courts in this District have looked to the analogous provision in the Copyright Act for guidance, 17 U.S.C. § 504(c), and have considered" the following factors in determining an appropriate amount of statutory damages: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." 5HK5584, 2020 WL 1646692, at *6 (citing Philip Morris USA Inc. v. A&V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)). A court has broad discretion to balance the factors in determining an appropriate statutory damages award. Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) ("Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs.") (internal quotation marks and citation omitted).

The analysis of the first and second factors is identical for each Defaulting Defendant and both factors weigh in favor of Roku. The full extent of the profits reaped by the Defaulting Defendants and the revenue lost by Roku as a result of the infringing activity of each Defaulting Defendant is unknown. ECF No. 129 at ¶¶ 33-37. As a result of the failure of each defendant to

appear, Roku's "actual damages are extremely difficult, if not impossible to calculate. Id. at ¶ 37.

The effect of the default is that the Defaulting Defendants have not responded to the evidence of

counterfeit sales with evidence of their own, such as expenses incurred that might reduce a

damages award. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 168-69

(S.D.N.Y. 1999); see also Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d

Cir. 1985) ("Where the defendants fail to produce evidence to refute plaintiffs' evidence of

defendants' sales of counterfeit products, the court must rely on less certain methods of proof.").

In situations such as this, courts generally "resolve[] any uncertainty" in favor of the plaintiff

with respect to the first two factors "so as not to allow the Defaulting Defendants to benefit from

their lack of participation in this litigation." Ideavillage Prods. Corp. v. Aarhus, No. 18-CV-

02739 (JGK) (SDA), 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019), adopted by, 2019 WL

2287726 (S.D.N.Y. May 28, 2019).

  The third factor—which examines the value of the trademark—also weighs in favor of

Roku. Roku has not submitted evidence supporting a particular monetary value for its trademark.

However, courts can "infer from the well-known reputations of most or all of the trademarks and

the sea of advertising that presses them on the consciousness of the buying public that they are

indeed valuable." Polo Ralph Lauren v. 3M Trading Co., No. 97-CV-4824 (JSM) (MH), 1999

WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999). Roku's Marks are valuable. At the time the

complaint was filed, Roku was "credited for many breakthroughs that have occurred in the video

streaming industry, including its various ROKU products." ECF No. 9 at ¶ 15. Roku is "a

leading manufacturer of a variety of digital media players and accessories (including remotes)

for video streaming and has earned an international reputation for quality, reliability and value."

Id. Additionally, Roku has put considerable effort into marketing and promotional efforts related

to its products. Id. at ¶ 20. Roku's marketing, promotions, and distribution have resulted in its

products acquiring "an international reputation for quality, reliability and value." Id. at ¶ 15.

The fourth factor examines the scale of the Defaulting Defendants' infringement. The

scale of infringement is greatly heightened in the case of online counterfeiting, because online

marketplaces like Amazon and Wish provide a "'virtually limitless number of customers' for the

counterfeit products." Kelly Toys Holdings LLC, 2022 WL 2801077, at *7 (quoting Streamlight

Inc. v. Gindi, No. 18-CV-987 (NG), 2019 WL 6733022, at *13 (E.D.N.Y. Oct. 1, 2019), adopted

by, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019)); see also Rolex Watch, U.S.A., Inc. v. Pharel,

No. 9-CV-4810 (RRM) (ALC), 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011), adopted by,

2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011) (finding that the use of three websites by

defendants to sell counterfeit products counseled in favor of the fourth factor); Golden Goose

Deluxe Brand v. Aadct Official Store, No. 19-CV-2521 (VSB) (GWG), 2020 WL 3167031, at *4

(S.D.N.Y. June 15, 2020), adopted by, 2020 WL 6157012 (S.D.N.Y. Oct. 21, 2020) (finding that

defaulting defendants who offered goods on e-commerce website could reach a "vast customer

base") (internal citation and quotation omitted). "'Courts have supported an inference of a broad

scope of operations in cases dealing specifically with websites that ship and sell to a wide

geographic range,'" such as the Amazon and Wish platforms used by the Defaulting Defendants

here. WowWee Grp. Ltd., 2019 WL 1375470, at *10 (quoting Spin Master v. Alan Yuan's Store,

325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018)). The fact that these sales occurred on such platforms

that permit nationwide sales, combined with the general "need to deter other possible infringers,"

ultimately weighs in favor of an award to Roku. Id.

The fifth factor—willfulness—also weighs in favor of Roku. "An infringement is willful

where the defendant had knowledge or recklessly disregarded the possibility that its actions

constituted infringement." <u>Spin Master Ltd</u>. 463 F. Supp. 3d at 374 (quoting <u>Streamlight</u>, 2019 WL 6733022, at *13). Because the Defaulting Defendants did not appear to defend this action, their infringement is "*per se* willful." <u>Ali Jr.</u>, 2021 WL 11643206, at *9 (internal quotation omitted). In addition, the "use of marks that are 'virtually identical' to the registered marks renders 'inescapable' the conclusion that the defendant's infringement and counterfeiting was intentional." <u>WowWee Grp.</u>, 2019 WL 1375470, at *10 (quoting <u>Coach, Inc. v. Melendez</u>, No. 10-CV-6178 (BSJ) (HSP), 2011 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), <u>adopted by</u>, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011)). As discussed, the marks on the counterfeit products here are virtually indistinguishable from the Roku Marks. ECF No. 9 at ¶ 2. This factor therefore weighs in Roku's favor.

The sixth factor measures the degree of cooperation by the Defaulting Defendants. Some courts look to whether the defendant has engaged in an "[a]ctive effort to mislead the court about continued willful counterfeiting," which "is a traditional aggravating factor in statutory damages[.]" <u>Sara Lee Corp.</u>, 36 F. Supp. 2d at 168. Other courts have "construe[d] this element against defendants who fail to answer or appear, thus preventing the exchange of comprehensive discovery." <u>Streamlight</u>, 2019 WL 6733022, at *14. In general, "it is more appropriate to look to whether the defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of counterfeiting." <u>Kelly Toys Holdings, LLC</u>, 2022 WL 2801077, at *7 (citing <u>Spin Master</u>, 463 F. Supp. 3d at 374). In this case, the factor of "cooperation is neutral." <u>Id.</u> Roku alleges that the Defaulting Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their stores. ECF No. 9 at ¶¶ 6, 32-34. However, Roku does not support this allegation with "evidence (including in the form of an expert affidavit) that would support that

18

conclusion." <u>Kelly Toys Holdings, LLC</u>, 2022 WL 2801077, at *7. On the current record, this factor does not support a heightened damages award for Roku. <u>See Ali Jr.</u>, 2021 WL 11643206, at *10.

The seventh and final factor is the potential for deterring the Defaulting Defendants. <u>See Tiffany (NJ) Inc. v. Luban</u>, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); <u>see also</u> <u>Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.</u>, No. 14-CV-6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), <u>adopted by</u>, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (explaining that an award of statutory damages will serve as a "specific deterrent" to the defendants as well as a "general deterrent to others who might consider engaging in infringing conduct in the future"). This factor considers the need for deterrence and the nature of the defendant's conduct. <u>See Ali Jr.</u>, 2021 WL 11643206, at *10. With counterfeit goods, such as the goods at issue here, the "need to deter . . . is particularly compelling[.]" <u>Bumble & Bumble, LLC</u>, 2016 WL 658310, at *5. The Defaulting Defendants have used a mark on their products that is identical, if not substantially indistinguishable, to the Roku Marks. ECF No. 9 at ¶ 2. And, given the fame of the Roku Marks, the Defaulting Defendants' use of the counterfeit mark was knowing. <u>Id.</u> at ¶¶ 23-31, 43, 48, 51. This factor therefore also weighs in Roku's favor. <u>See Moonbug Entm't Ltd. v. All Night Revelry Store</u>, No. 21-CV-10315 (LGS) (JLC), 2023 WL 116565, at *6 (S.D.N.Y. Jan. 6, 2023), <u>adopted by</u>, 2023 WL 1402072 (S.D.N.Y. Jan. 31, 2023) (finding this factor in plaintiff's favor where defaulting defendants engaged in willful counterfeiting).

Roku seeks statutory damages of $1,050,000 under the Lanham Act for each of the 19 Defaulting Defendants. Specifically, Roku seeks $25,000 for the ten Defaulting Defendants that sold from one to ten counterfeit items; $50,000 for the three Defaulting Defendants that sold

between 21 and 51 counterfeit items; $100,000 for the five Defaulting Defendants that sold

between 111 and 1,024 counterfeit items; and $150,000 for the one Defaulting Defendant that

sold 20,947 counterfeit items. ECF No. 129-1. These amounts are based on (1) information

obtained from Amazon and Wish about the number of sales of counterfeit products made by the

Defaulting Defendants on those platforms; (2) Roku's orders of counterfeit products from the

Defaulting Defendants; and (3) the Defaulting Defendants' wrongful use of the Roku marks.

ECF No. 130 at ¶ 19.

        All of the requested awards fall within the range of awards granted by courts in this

District in similar circumstances. See Roku, Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships,

& Unincorporated Ass'ns Identified on Schedule A to the Complaint, No. 22-CV-2168 (PKC),

2023 WL 137747, at *3 (S.D.N.Y. Jan. 9, 2023) (awarding $130,000 per defaulting defendant

where defendants sold counterfeit items over the internet and failed to participate in the action

making it "impossible to assess Roku's loss and the extent of Defaulting Defendants' profits

gained and expenses saved"); Rolex Watch U.S.A., Inc. v. Jones., No. 99-CV-2359 (DLC) (FM),

2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002) (awarding $500,000 in statutory damages for

defaulting defendant's willful infringement of the Rolex trademarks); Off-White LLC v. adagio,

No. 19-CV-676 (RA) (JLC), 2020 WL 1646673, at *7-8 (S.D.N.Y. Apr. 3, 2020), adopted as

modified by, 2020 WL 3050383 (S.D.N.Y. June 8, 2020) (awarding $100,000 per defaulting

defendant where defendants engaged in counterfeiting and failed to participate in the litigation

thereby depriving plaintiff "of any records from which to assess the value of the infringing

materials"); Off-White LLC v. ^_^Warm House^_^ Store, No. 17-CV-8872 (GBD) (GWG),

2018 WL 4927905, at *5 (S.D.N.Y. Oct. 11, 2018), adopted in part by, 2019 WL 418501

(S.D.N.Y. Jan. 17, 2019) (awarding plaintiff $100,000 per defaulting defendant engaged in

trademark infringement where no records were available to assess the value of defendants' infringement); <u>Palace Skateboards Grp. v. Glob. Outlet Store</u>, No. 20-CV-6103 (GBD) (SN), 2024 WL 4534668, at *5 (S.D.N.Y. Sept. 6, 2024) (awarding $75,000 in damages per defendant where defaulting defendants engaged in online counterfeiting and "have not cooperated or provided any records"); <u>Golden Goose S.P.A. v. Adashoe001</u>, No. 20-CV-2122 (PKC), 2020 WL 5569583, at *3 (S.D.N.Y. Sept. 16, 2020) (awarding $75,000 against each defaulting defendant engaged in trademark infringement given "the difficulty in ascertaining actual damages in light of defendants' failure to appear").

Accordingly, I respectfully recommend that Roku be awarded statutory damages in the amounts set forth below, for a total statutory damages award of $1,050,000.

| Defaulting Defendant | Statutory Damages Award |
|---|---|
| 1.  Gaudi | $150,000 |
| 2.  HzgangDirect | $100,000 |
| 3.  AuntbingluuX | $25,000 |
| 4.  Electronic_outlet | $25,000 |
| 5.  huangchen123 | $25,000 |
| 6.  jinyuzhir | $50,000 |
| 7.  kappdo | $100,000 |
| 8.  laceskong | $25,000 |
| 9.  Loverhart | $100,000 |
| 10. Mccmyy | $50,000 |
| 11. Monsterlady | $100,000 |
| 12. Mykshop | $25,000 |
| 13. Noral | $50,000 |
| 14. Phonemol | $100,000 |
| 15. Richapex2016 | $25,000 |
| 16. Schaef | $25,000 |
| 17. Xuenvzhuang | $25,000 |
| 18. Xutao | $25,000 |
| 19. zhanghongyue | $25,000 |
| **TOTAL** | **$1,050,000** |

2.  <u>Permanent Injunction</u>

Roku also seeks relief in the form of a permanent injunction. ECF No. 129 at ¶ 65. "The party requesting permanent injunctive relief must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." <u>Ognibene v. Parkes</u>, 671 F.3d 174, 182 (2d Cir. 2011). First, the allegations in the complaint are sufficient to demonstrate irreparable harm. <u>See, e.g.</u>, <u>Really Good Stuff, LLC v. BAP Investors, L.C.</u>, 813 F. App'x 39, 44 (2d Cir. 2020) (consumer confusion and loss of goodwill demonstrate irreparable harm) (summary order). As described in the complaint, the Defaulting Defendants improperly advertise, market and sell counterfeit products by embodying a mark that is identical to at least one of the various Roku trademarks, resulting in consumer confusion. ECF No. 9 at ¶¶ 2, 7, 44, 48, 53, 60-62. Such unauthorized use of Roku's marks creates a likelihood of confusion as to the origin and quality of the goods and as to their affiliation with, or sponsorship or approval by, Roku. ECF No. 9 at ¶¶ 44, 53, 60. Additionally, the Defaulting Defendants design their online storefronts to appear to be authorized sellers of Roku products, making it difficult for consumers to distinguish between the counterfeit sites and authorized retailers. ECF No. 9 at ¶¶ 26-27. Second, Roku has established success on the merits due to the entry of the default judgment as to liability. <u>See</u> <u>Ideavillage Prod. Corp. v. Bling Boutique Store</u>, No. 16-CV-9039, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018) (granting request for a permanent injunction where the plaintiff "demonstrated a likelihood of consumer confusion with respect to the source and quality of the goods the Defaulting Defendants sell"); <u>Roku, Inc.</u>, 2023 WL 137747, at *2 (granting Roku's request for a permanent injunction against the defaulting defendants' infringing activities); <u>Gucci Am., Inc. v. Tyrrell-</u>

Miller, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (issuing a permanent injunction preventing defaulting defendant from continuing her counterfeiting and infringing activities).

Therefore, I recommend the entry of a permanent injunction against each Defaulting Defendant, as requested by Roku.

3.    Post-Judgment Interest

Roku does not seek post-judgment interest in its submissions. Even so, "[p]ost-judgment interest is awarded on any money judgment recovered in a civil case," Alan Yuan's Store, 325 F. Supp. 3d at 426 (citing 28 U.S.C. § 1961), and the Second Circuit has held that an award of post-judgment interest is "mandatory" and should be awarded at the statutory rate prescribed by section 1961." Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . for the calendar week preceding[] the date of judgment." 28 U.S.C. § 1961(a). Accordingly, I recommend that Roku be awarded post-judgment interest on the damages award according to the statutory formula set forth in 28 U.S.C. § 1961.

4.    Asset Freeze and Transfer

Finally, Roku seeks an order extending the pre-judgment freeze on the Defaulting Defendants' assets and a transfer of those assets to Roku. ECF No. 129 at ¶¶ 76-78. Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. Additionally, Section 34(a) of the Lanham Act provides that the Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of" a trademark owner's rights. 15 U.S.C. § 1116(a).

"[C]ourts in this district routinely order transfers of infringing defendant's frozen assets to plaintiffs," relying on Federal Rule of Civil Procedure 64, § 1116(a) of the Lanham Act, and the "Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief.'" Off-White LLC v. ^ ^Warm House^ ^ Store, No. 17-Civ-8872, 2019 WL 418501, at *6 (S.D.N.Y. Jan. 17, 2019) (internal quotation marks omitted) (quoting Gucci Am., Inc. v. Curveal Fashion, No. 09-CV-8458, 2010 WL 308303, at *5-6 (S.D.N.Y. Jan. 20, 2010)) (awarding transfer of frozen assets pursuant to Rule 64 and § 1116(a) Lanham Act in case resulting in default judgment); see also Roku, 2023 WL 137747, at *4 (granting Roku's request for a post-judgment asset freeze and transfer order); Smart Study, 2020 WL 3639659, at *8 (granting the continuance of the current asset freeze as well as post-judgment asset freeze); Alan Yuan's Store, 325 F. Supp. 3d at 427 (ordering continuing asset restraint and awarding transfer of frozen assets in full or partial satisfaction of damages award). Additionally, the fact that the Defaulting Defendants did not appear to defend this action and defaulted demonstrates that there is a substantial risk that enforcement of the judgment will be "frustrated in the absence" of an asset freeze and transfer. See Roku, 2023 WL 137747, at *4.

I therefore recommend granting Roku's request for continuation of the pre-judgment restraint on the transfer of the Defaulting Defendants' assets and an order that such assets in the hands of affected third parties be transferred to Roku in satisfaction of the judgment, provided that the amount seized and transferred shall not exceed the amount of the judgment plus any accrued post-judgment interest.

## CONCLUSION

For the foregoing reasons, I recommend that Roku be awarded $1,050,000 in statutory damages under the Lanham Act. Additionally, I recommend that Roku receive post-judgment interest on the amount of the judgment. I further recommend that Roku's request for a permanent injunction, enjoining the Defaulting Defendants from further counterfeiting or infringing the Roku Trademarks be granted. Finally, I recommend that Roku's request for a post-judgment asset restraint be granted.

DATED:    New York, New York
          March 31, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge

\*                    \*                    \*

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jeannette A. Vargas. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

25